1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEBRA A. KELLY,

                Plaintiff,

      v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

                Defendant.

CASE NO.    C04-5821RBL

REPORT AND
RECOMMENDATION

Noted for December 2, 2005

       Plaintiff, Debra A. Kelly, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

       Plaintiff currently is fifty-two years old.[1] Tr. 35. She obtained a general equivalency diploma and an Associates of Art degree. Tr. 24, 101. She has past work experience as an office clerk and office manager. Tr. 24, 96.

---

      [1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

1    Plaintiff protectively filed her applications for disability insurance and SSI benefits on February 27,

2    2001, alleging disability as of August 14, 1994, due to depression and post traumatic stress disorder

3    ("PTSD"). Tr. 23-24, 89-91, 95, 259-61.  Both applications were denied initially and on reconsideration.

4    Tr. 35-38, 44, 258, 262-63, 267-68.  Plaintiff requested a hearing, which was held before an administrative

5    law judge ("ALJ") on August 25, 2003. Tr. 271.  At the hearing, plaintiff, represented by counsel, appeared

6    and testified, as did a medical expert and a vocational expert. Tr. 271-329.

7    On December 22, 2003, the ALJ issued a decision determining plaintiff to be not disabled, finding in

8    relevant part as follows:

9       (1)    at step one of the disability evaluation process, plaintiff had not engaged in
               substantial gainful activity since her alleged onset date of disability;
10

       (2)    at step two, plaintiff had "severe" impairments consisting of depression, PTSD,
11             hepatitis C, and a hernia;

12       (3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of
               those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;
13

       (4)    at step four, plaintiff had the residual functional capacity to perform a modified
14             range of light work, which precluded her from performing her past relevant
               work; and
15

       (5)    at step five, plaintiff was capable of performing other jobs existing in significant
16             numbers in the national economy.

17    Tr. 25, 32-34.  Plaintiff's request for review was denied by the Appeals Council on October 1, 2004,

18    making the ALJ's decision the Commissioner's final decision. Tr. 1, 6; 20 C.F.R. §§ 404.981, 416.1481.

19    On December 3, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision.[2]

20    (Dkt. #1).  Specifically, plaintiff argues that the ALJ's decision finding him disabled should be reversed and

21    remanded for an award of benefits because:

22       (a)    the ALJ erred in finding that plaintiff did not meet or equal the criteria for 20
               C.F.R. Part 404, Subpart P, Appendix 1, § 5.05 ("Listing 5.05");
23

24

25    _____
       [2]As indicated, plaintiff's complaint was filed more than sixty days after the Commissioner issued her final decision.  A
       party may obtain judicial review of the Commissioner's final decision by commencing a civil action in federal court "within sixty
26    days after the mailing to him of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. §
       405(g); 20 C.F.R. §§ 404.981, 404.982, 416.1481, 416.1482.  This "sixty-day time limit is not jurisdictional, but is instead a
27    statute of limitation which the Secretary may waive." Banta v. Sullivan, 925 F.2d 343, 345 (9th Cir. 1991).  As such, failure to
       file within the sixty-day time limit is an affirmative defense, which "is properly raised in a responsive pleading." Vernon v.
       Heckler, 811 F.2d 1274, 1278 (9th Cir. 1987) (citing Federal Rule of Civil Procedure 8(c)).  Because the Commissioner failed to
28    raise the statute of limitations as an affirmative defense in her responsive pleading, the issue is waived, and the undersigned will
       deal with this matter on its merits.

REPORT AND RECOMMENDATION
Page - 2

1

    (b)      the ALJ erred in assessing plaintiff's residual functional capacity; and

2

    (c)      the ALJ erred in finding plaintiff capable of performing other work existing in
            significant numbers in the national economy.

3

While the undersigned agrees that the ALJ erred in finding plaintiff not disabled, for the reasons set forth

4

below, this matter should be remanded for further administrative proceedings.

5

DISCUSSION

6

        This court must uphold the Commissioner's determination that plaintiff is not disabled if the

7

Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

8

support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is

9

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson

10

v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than

11

a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

12

1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than

13

one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d

14

577, 579 (9th Cir. 1984).

15

I.      The ALJ Properly Found Plaintiff's Hepatitis C Did Not Meet or Equal the Criteria for Listing 5.05

16

        To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step

17

sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. At step three of the evaluation process, the

18

ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in

19

20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R §§ 404.1520(d), 416.920(d); Tackett

20

v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or equal a listed

21

impairment, he or she is deemed disabled. Id. The burden of proof is on the claimant to establish he or she

22

meets or equals any of the impairments in the Listings. Tacket, 180 F.3d at 1098.

23

        A mental or physical impairment "must result from anatomical, physiological, or psychological

24

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20

25

C.F.R. §§ 404.1508, 416.908. It must be established by medical evidence "consisting of signs, symptoms,

26

and laboratory findings." Id. An impairment meets a listed impairment "only when it manifests the specific

27

findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

28

It equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and

1  laboratory findings) are at least equivalent in severity to the set of medical findings for the listed

2  impairment." Id. at *2.  However, "symptoms alone" will not justify a finding of equivalence. Id.

3         Plaintiff argues that she meets the requirements of subsections (C) and (D) of 20 C.F. R. Part 404,

4  Subpart P, Appendix 1, § 5.05 ("Listing 5.05").  Listing 5.05(C) and (D) read in relevant part:

5         Chronic liver disease (e.g., portal, postnecrotic, or biliary cirrhosis; chronic active
          hepatitis; Wilson's disease). With: . . .
6
          C. Serum bilirubin of 2.5 mg. per deciliter (100 ml.) or greater persisting on repeated
7         examinations for at least 5 months; or

8         D. Ascites, not attributable to other causes, recurrent or persisting for at least 5 months,
          demonstrated by abdominal paracentesis or associated with persistent hypoalbuminemia
9         of 3.0 gm. per deciliter (100 ml.) or less . . .

10 20 C.F. R. Pt. 404, Subpt. P, App. 1, § 5.05.  Specifically, plaintiff asserts she meets Listing 5.05(C) based

11 a bile count of 2.5mg/dl obtained a few weeks after the administrative hearing. Plaintiff's Opening Brief, p.

12 13.  Plaintiff, however, does not show that this count is contained anywhere in the record, let alone that it

13 persisted on repeated examinations for at least five months.  In addition, that plaintiff's hepatitis C may meet

14 or equal the requirements of Listing 5.05(D), does not mean it actually does.  Again, plaintiff points to

15 nothing in the record to support this assertion.

16        Plaintiff argues the ALJ made no inquiry into whether her hepatitis C met or equaled Listing 5.05.

17 The ALJ, however, found specifically that none of the requirements of that listing had been met or equaled

18 in this case. Tr. 25.  In addition, in light of the lack of medical evidence in the record to support a finding

19 that plaintiff's hepatitis C met or equaled those requirements, the ALJ also had no duty to further develop

20 the record on this issue.  See  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (ALJ's duty to further

21 develop record triggered only when there is ambiguous evidence or when record is inadequate to allow for

22 proper evaluation of evidence).  As such, the ALJ did not err in her step three analysis.

23 II.    The ALJ Erred In Assessing Plaintiff's Residual Functional Capacity

24        If a disability determination "cannot be made on the basis of medical factors alone at step three of

25 the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and

26 assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A

27 claimant's residual functional capacity assessment is used at step four to determine whether he or she can do

28 his or her past relevant work, and at step five to determine whether he or she can do other work. Id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ assessed plaintiff with the following residual functional capacity:

> [T]he claimant retains the residual functional capacity to perform a full range of light work.  She is capable of performing simple repetitive tasks.  She would work best in an environment with limited interaction with the public but she can interact appropriately with supervisors and co-workers.  Also she would function best in a smaller work setting.  Due to some problems with immediate memory recall the claimant may need some demonstration.

Tr. 30.  Plaintiff argues the ALJ erred in finding her physical impairments enabled her to perform light work. However, plaintiff points to nothing in the record that contradicts the ALJ's finding on this issue.  Indeed, the substantial evidence in the record wholly supports such a finding.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the court itself may draw "specific and legitimate inferences from the

1  ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

2          The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

3  either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a

4  treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

5  legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However, the

6  ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739

7  F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain

8  why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07

9  (3d Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

10         In general, more weight is given to a treating physician's opinion than to the opinions of those who

11  do not treat the claimant. <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of

12  a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or

13  "by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190,

14  1195 (9th Cir.,2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242

15  F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the

16  opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A nonexamining physician's opinion may

17  constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-

18  31; <u>Tonapetyan</u>, 242 F.3d at 1149.

19         In late May 1998, plaintiff was examined by Dr. Timothy J. Schubert, who diagnosed her as having

20  probable hepatitis C secondary to intravenous drug abuse, active intravenous drug abuse and alcoholism,

21  and "[d]epresion, presumably related to the above." Tr. 163.  He found plaintiff's substance abuse to be

22  "her leading medical problem." <u>Id.</u>  Plaintiff's physical examination was largely unremarkable, except for the

23  above diagnoses. Tr. 162.  Accordingly, Dr. Schubert did not note any significant physical functional

24  limitations. Tr. 163.

25         Another physical examination of plaintiff was performed by Dr. Mark Heilbrunn in late January

26  2002.  His examination findings were fairly unremarkable as well. Tr. 222-24.  He diagnosed plaintiff with

27  hepatitis C, intravenous drug use, alcoholic liver disease, and depression. Tr. 224.  All of her impairments

28  were "secondary to intravenous drug use and alcoholic liver disease." <u>Id.</u>  While Dr. Heilbrunn concluded

1  that "[t]he extent of her alcohol and drug addictions coupled with her depression preclude her ability to

2  work,"[3] he found she had no work-related physical functional limitations. Tr. 225.  The record also contains

3  the report of a non-examining consulting physician, but that report indicates plaintiff is capable of

4  performing a full range of light work. Tr. 226-33.

5        Plaintiff further argues that the ALJ failed to include all of her mental functional limitations in her

6  assessment of plaintiff's residual functional capacity.  Specifically, plaintiff asserts the ALJ failed to take into

7  account the many moderate limitations found by Terilee Wingate, Ph.D., and Dr. Harold B. Johnston, two

8  other non-examining medical sources in the record.  The undersigned agrees.  In analyzing the medical

9  evidence in the record regarding plaintiff's mental impairments, the ALJ merely stated that the opinion of

10 Dr. James Parker, an examining psychiatrist, that plaintiff was capable of performing simple and repetitive

11 tasks, and the opinion of Dr. Richard Johnson, the medical expert, that plaintiff should have limited contact

12 with the public, were reasonable and consistent with the record as a whole. Tr. 30.

13       The ALJ, however, makes no mention of the report of Dr. Wingate and Dr. Johnston, who found

14 plaintiff to be markedly limited in her ability to interact appropriately with the general public (Tr. 208), and

15 moderately limited in her ability to: understand, remember and carry out detailed instructions; maintain

16 attention and concentration; perform activities within a schedule; maintain regular attendance; be punctual;

17 complete a normal workday and workweek; perform at a consistent pace; get along with co-workers;

18 respond appropriately to changes in the work setting; and set realistic goals or make plans independently of

19 others. Tr. 207-08.  Defendant argues the ALJ's assessment of plaintiff's residual functional capacity

20 account for all of the mental functional limitations found by Drs. Wingate and Johnston.  While this may be

21 true for some of the limitations they found, such as the limitation to simple, repetitive tasks, it is not

22 necessarily true that it accounts for the others.

23       Defendant, for example, argues that the ALJ's statement that plaintiff should have only limited

24 contact with the public encompasses the marked limitation Drs. Wingate and Johnston found she had in

25 interacting appropriately with the public.  It is not at all clear, however, that the term "marked" used by Dr.

26 Wingate and Dr. Johnston, and the term "limited" used by the ALJ were intended to mean the same thing.

27

28      [3]Under the Social Security Act, however, plaintiff will not be found disabled if alcoholism or drug addiction would be "a contributing factor material to the Commissioner's determination" that she is disabled. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)).

REPORT AND RECOMMENDATION
Page - 7

1   Further, it is difficult to believe that a limitation to simple, repetitive tasks truly accounts for a moderate
2   limitation in the ability to complete a normal workday or workweek. It is entirely conceivable, in other
3   words, that one can be capable of performing simple, repetitive tasks, and yet be incapable of completing a
4   normal workday or workweek. In addition, while the ALJ limited plaintiff to a smaller work setting, the
5   ALJ also did expressly state that she could interact appropriately with co-workers, a finding that on its face
6   would seem to contradict the opinion of Drs. Wingate and Johnston. In any event, because the ALJ failed
7   to provide any discussion of their reports, it is not possible for the undersigned to discern with any certainty
8   exactly what the ALJ intended. As such, the ALJ erred.

9   III.    The ALJ Erred in Finding Plaintiff Not Disabled at Step Five of the Disability Evaluation Process

10          If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation
11  process the ALJ must show there are a significant number of jobs in the national economy the claimant is
12  able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(d)-(e),
13  416.920(d)-(e). The ALJ can do this through the testimony of a vocational expert or by reference to the
14  Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock
15  v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000). The Grids may be used if they "*completely and accurately*
16  represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in the original). That is, the
17  claimant "must be able to perform the *full range* of jobs in a given category." Id. (emphasis in the original).
18  If the claimant "has significant non-exertional impairments," reliance on the Grids is not appropriate.
19  Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe,
20  may limit claimant's functional capacity in ways not contemplated by Grids).

21          Plaintiff argues the ALJ erred in using the Grids to find her disabled. This, however, is not what the
22  ALJ did. The ALJ stated that if plaintiff were capable of performing the full range of light work, a finding
23  of "not disabled" would be directed by the Grids. Tr. 31. The ALJ then went on to state though, that
24  plaintiff's "ability to perform all or substantially all of the requirements of light work" was "impeded by
25  additional exertional and/or non-exertional limitations." Id. Thus, instead of relying on the Grids, the ALJ
26  obtained the testimony of a vocational expert to assist in determining whether plaintiff was capable of
27  performing other work existing in significant numbers in the national economy. Tr. 31-32.

28          Plaintiff seems to take issue with the ALJ's use of the Grids as a "framework for decision-making"

1  at step five of the disability evaluation process. Tr. 33.  In combination with vocational expert testimony,

2  however, such use of the Grids is entirely proper.  See Cooper v. Sullivan, 880 F.2d 1152, 1155-56 (9th Cir.

3  1989) (if exertional impairments alone are insufficient to direct conclusion of disability, ALJ then must use

4  grids as "framework" for consideration of how much individual's work capability is further diminished by

5  nonexertional limitations).  Accordingly, plaintiff's argument is without merit.

6         An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

7  posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

8  1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the

9  medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

10  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by

11  the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that

12  description those limitations he finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)

13  (because ALJ included all limitations that he found to exist, and those findings were supported by

14  substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

15         The ALJ posed a hypothetical question to the vocational expert containing essentially the same

16  limitations as in her assessment of plaintiff's residual functional capacity. Tr. 321-22.  In response to that

17  question, the vocational expert testified that while plaintiff was incapable of returning to her past relevant

18  work, she could perform other jobs existing in significant numbers in the national economy. Tr. 322-24.

19  Based on the testimony of the vocational expert, the ALJ found plaintiff not disabled at step five of the

20  disability evaluation process. Tr. 32.

21         Plaintiff argues that "common sense" would indicate that when even one of the mental functional

22  limitations found by Drs. Wingate and Johnston are added to the hypothetical question, no vocational expert

23  would find such an individual could perform any type of work.  The court, however, requires more than just

24  common sense to find plaintiff disabled.  Rather, it must rely on the evidence in the record before it.  While,

25  as discussed above, the undersigned agrees that the ALJ erred in assessing plaintiff's residual functional

26  capacity because the ALJ did not properly consider the limitations found by Dr. Wingate and Dr. Johnston,

27  thereby making the vocational expert's testimony unreliable as well, it is not clear that any of those

28  limitations in themselves or in combination would be disabling, or that the ALJ would be required to even

REPORT AND RECOMMENDATION
Page - 9

1  include those limitations in the hypothetical question.

2         It is true that no other medical source in the record has specifically rejected the limitations found by

3  Dr. Wingate and Dr. Johnston. However, they are the only medical sources who have found plaintiff to

4  have all of those limitations. In addition, as non-examining consulting physicians, their opinion constitutes

5  substantial evidence only to the extent that "it is consistent with other independent evidence in the record."

6  Id. at 830-31; Tonapetyan, 242 F.3d at 1149. Indeed, their report appears to be based on the examination

7  conducted by Dr. Parker, who found plaintiff was limited only to performing simple, repetitive tasks. Tr.

8  189-92, 205. This does not mean, as discussed above, that the ALJ did not err in failing to acknowledge

9  the limitations found by Drs. Wingate and Johnston. Rather, the undersigned merely finds that the ALJ did

10  not properly consider them.

11        Finally, plaintiff asserts the ALJ erred in not including any limitations in the hypothetical question

12  stemming from her diagnosis of hepatitis C. As discussed above, however, plaintiff points to nothing in the

13  record to indicate this condition has resulted in any significant functional limitations. As such, the ALJ did

14  not err in excluding any limitations from plaintiff's diagnosis of hepatitis C from either the assessment of her

15  residual functional capacity or the hypothetical question posed to the vocational expert.

16  IV.   This Case Should Be Remanded for Further Administrative Proceedings

17        The court may remand a case "either for additional evidence and findings or to award benefits."

18  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Benefits may be awarded where "the record has

19  been fully developed" and "further administrative proceedings would serve no useful purpose." Id.; Holohan

20  v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

21        (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's]
         evidence, (2) there are no outstanding issues that must be resolved before a
22        determination of disability can be made, and (3) it is clear from the record that the ALJ
         would be required to find the claimant disabled were such evidence credited.
23
24  Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because

25  issues still remain with respect to plaintiff's residual functional capacity and whether she is able to perform

26  other jobs existing in significant numbers in the national economy, this matter should be remanded to the

27  Commissioner for further administrative proceedings in accordance with the findings contained herein.

CONCLUSION

28        Based on the foregoing discussion, the court should find the ALJ improperly concluded plaintiff was

REPORT AND RECOMMENDATION
Page - 10

not disabled, and should remand this matter to the Commissioner for further administrative proceedings.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 2, 2005**, as noted in the caption.

DATED this 8th day of November, 2005.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 11